UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TECNITOYS JUGUETES, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 3731 |
| | ) | |
| DISTRIBUTOYS.COM, INC. and RONNIE GOLDFINGER, | ) ) | Honorable Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Tecnitoys Juguetes, S.A. ("Tecnitoys"), a toy car manufacturer, filed this breach of contract suit against its distributor, Distributoys.com, Inc. ("Distributoys"), and its distributor's president, Ronnie Goldfinger (collectively, the "defendants"), alleging that the defendants failed to pay for toy cars Distributoys sold on Tecnitoys' behalf and refused to return toy cars Tecnitoys entrusted to Distributoys. Tecnitoys also includes counts alleging conversion and requesting injunctive relief. Before the court is Tecnitoys' motion for a temporary restraining order that would: (1) enjoin the defendants from (a) soliciting sales of the toy cars, or (b) disposing of the toy cars or any proceeds from the sale or other disposition of the toy cars, and (2) direct the defendants to return the toy cars to Tecnitoys. For the reasons that follow, the motion is granted in part and denied in part.

### I. LEGAL STANDARD

"The standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions." *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (citing *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001)). Thus, to obtain the temporary restraining order it has

proposed, Tecnitoys must show that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without the temporary restraining order, (3) the harm it would suffer is greater than the harm that the temporary restraining order would inflict on the defendants, and (4) the temporary restraining order is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (setting forth the requirements for a preliminary injunction) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)). "How strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) (citing *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544 (7th Cir. 2007), and *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S., Inc.*, 549 F.3d 1079 (7th Cir. 2008)).

## II.   ANALYSIS

### A.   Goldfinger

As an initial matter, Tecnitoys has failed to show that it is reasonably likely to succeed on the merits against Goldfinger. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" (quoting 11A C. Wright, A. Miller, & M. Kane, FED. PRACTICE & PROCEDURE § 2948 (2d ed. 1995) (emphasis added; footnotes omitted))). Tecnitoys names Goldfinger as a defendant only in its conversion and injunctive relief counts. In Illinois, "[t]o prove the tort of conversion, a plaintiff must establish that he or she: (1) had a right to the converted property; (2) had an absolute and unconditional right to its immediate possession; (3) demanded its possession

from the defendant; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Meyer v. Dep't of Pub. Aid*, 392 Ill. App. 3d 31, 36 (Ill. App. Ct. 2009) (citing *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122 (Ill. App. Ct. 2004)). Even assuming that Tecnitoys can satisfy the first three prongs of the test, Tecnitoys fails to offer any evidence that Goldfinger assumed control, dominion, or ownership of the property as an individual and not merely as an officer of Distributoys.[1] In addition, Tecnitoys fails to offer any evidence that would allow this court to pierce the corporate veil to reach Goldfinger.[2] Since Tecnitoys cannot show that it is likely to succeed against Goldfinger on the conversion count, it cannot show that it is likely to succeed against Goldfinger on the injunctive relief count since success on the merits is an element of injunctive relief. *See Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998) ("Before a court may award permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the

---

[1] For its conversion count against Goldfinger, Tecnitoys alleges that Goldfinger "as an officer of Distributoys . . . actively participated when Distributoys took possession of the inventory, and was involved when Distributoys refused to return Tecnitoys' inventory." (Compl. ¶¶ 34-35.) This is not enough to show a likelihood of success against Goldfinger as an individual.

[2] "Veil-piercing is an equitable remedy governed by state law." *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009). "In determining which state's law applies, the court looks to the choice-of-law provisions of the forum state, here Illinois." *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 999 (N.D. Ill. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Illinois follows the internal affairs doctrine as its choice-of-law principle in cases alleging impropriety of corporate governance." *Id.* (citing *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382-83 (7th Cir. 1990), *Paulman v. Kritzer*, 38 Ill.2d 101 (1967), and the Restatement (2d) of Conflicts of Law §§ 301-10). "Under the internal affairs doctrine the substantive law of the state of incorporation governs." *Id.* (citing *Heyman v. Beatrice Co.*, No. 89 C 7381, 1995 WL 151872 at *6 (N.D. Ill. April 3, 1995)). Distributoys is a Delaware corporation. "Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.'" *In re Broadstripe, LLC*, 444 B.R. 51, 102 (Bankr. D. Del. 2010) (quoting *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)). "To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the companies 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness ... [is] present.'" *Harper v. Del. Valley Broad., Inc.*, 743 F. Supp. 1076, 1085 (D. Del. 1990). Tecnitoys has not presented evidence that Goldfinger and Distributoys operated as a single economic entity or that it is unfair not to hold Goldfinger liable for Distributoys' actions.

irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987), *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1567 (7th Cir. 1996), and *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386-88 (7th Cir. 1984)). As a result, Tecnitoys' motion for a temporary restraining order is denied insofar as Tecnitoys seeks to enjoin Goldfinger.

**B.     Distributoys**

Whether Tecnitoys has made a sufficient showing that it is likely to succeed on the merits of its claims against Distributoys is a closer question. The court has already set forth the elements of a conversion claim in Illinois. "The elements of a breach of contract claim under Illinois law are: (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." *Am. Safety Cas. Ins. Co. v. City of Waukegan*, --- F. Supp. 2d ----, 2011 WL 830763, at *30 (N.D. Ill. Mar. 3, 2011) (citing *Roberts v. Adkins*, 397 Ill. App. 3d 858, 866-67 (Ill. App. Ct. 2010)). "A party's 'failure to comply with a duty imposed by the contract gives rise to the breach.'" *Id.* (quoting *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (Ill. App. Ct. 1999)).

It is undisputed that: (a) Distributoys accepted delivery of the toy cars even though Distributoys did not place an order for toy cars, (b) Distributoys asked Tecnitoys to pay for the cost of handling and storing the toy cars[3], (c) Distributoys fulfilled orders of toy cars for various retailers and end-users, and (d) Distributoys refused Tecnitoys' request that Distributoys return the toy cars. (Decl. of Ronald E. Goldfinger ¶¶ 4, 13, 19, 21.) Notably, Distributoys does not

---

[3]     In his declaration, Goldfinger states, "the logistics requirements for handling and storage of the inventory have been expensive and have drained Distributoys['] resources . . . Distributoys has sought payment for these costs . . . ." (Decl. of Ronald E. Goldfinger ¶ 19.)

4

contest Tecnitoys' assertion that Tecnitoys always retained control over how Distributoys disposed of the toy cars – whether by distributing the toy cars through channels approved by Tecnitoys (e.g. by fulfilling orders made with online retailers) or by fulfilling orders arranged by Tecnitoys itself.  (Decl. of Charles A. Ehredt ¶¶ 6, 14-15.)  Distributoys also represented in open court that it is in financial distress (in the midst of a controlled liquidation at the direction of its bank, the Community Bank of Oak Park River Forest (the "Bank"); indeed, the Bank has a lien on all of Distributoys' assets.  *See* Decl. of Goldfinger ¶ 20).  In addition, it is undisputed that Distributoys has not paid for the toy cars.

Tecnitoys argues that these undisputed facts suggest that the arrangement it had with Distributoys is a bailment.  In Illinois, "'[a] bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it.'"  *Robledo v. City of Chi.*, --- F. Supp. 2d ----, 2011 WL 1303384, at *11 (N.D. Ill. Apr. 6, 2011) (quoting *Am. Ambassador Cas. Co. v. City of Chi.*, 205 Ill. App. 3d 879, 884 (Ill. App. Ct. 1990)).  Distributoys, on the other hand, contends that their arrangement was a "sale or return", which the Uniform Commercial Code ("UCC") (which Illinois has adopted) defines as an arrangement in which "delivered goods may be returned by the buyer even though they conform to the contract" and "the goods are delivered primarily for resale."  810 Ill. Comp. Stat. 5/2-326(1) (2001).  Importantly, "goods held on sale or return are subject to [the claims of the buyer's creditors] while in the buyer's possession."  810 Ill. Comp. Stat. 5/2-326(2) (2001).  Distributoys argues that its creditor, the Bank, has a lien on the toy cars that takes precedence over any interest Tecnitoys may have over either the toy cars or any proceeds from the sale of the toy cars.  Alternatively, Distributoys argues that the arrangement was a consignment, which the

5

UCC (as effective in 2008) defined as certain transactions "in which a person delivers goods to a merchant for the purpose of sale" and where the merchant "is not generally known by its creditors to be substantially engaged in selling the goods of others." 810 Ill. Comp. Stat. 5/9-102(a)(20) (2002). However, it seems unlikely that the arrangement fits the description of a consignment where Distributoys acknowledges that it is a distributor in the habit of selling the goods of others. (Decl. of Ronald E. Goldfinger ¶¶ 3-4.)

Unfortunately, some of the facts the parties point to are not helpful since they are consistent with either position. For example, the fact that Distributoys accepted delivery of the toy cars could be a bailment or a "sale or return". Only two facts weigh in favor of one side over the other: first of all, if Tecnitoys had sold the toy cars to Distributoys, then Tecnitoys likely would have relinquished control over the toy cars and would not have had the ability (for years after the purported sale) to direct Distributoys to fulfill orders Tecnitoys had arranged using toy cars in Distibutoys' possession. Secondly, the fact that Distributoys asked Tecnitoys to bear the cost of handling and storing the toy cars for years after the toy cars were delivered is not consistent with what happens in the typical sale. As stated above, it is undisputed that, for years after Distributoys accepted delivery of the toy cars, Tecnitoys continued to direct the sale of the toy cars and provide services for Tecnitoys in connection with the sale of the toy cars, while Distributoys charged Tecnitoys for these services. These facts compel the court to find that Tecnitoys has shown that it is reasonably likely to prevail over Distributoys on its conversion claim since the undisputed facts tend to show that Tecnitoys never relinquished ownership of the

6

toy cars, has a right to the toy cars, has a right to immediately possess the toy cars, asked that Distributoys return the toy cars, and Distributoys refuses to return them.[4]

Having concluded that Tecnitoys has met its burden of showing that it is likely to succeed on the merits against Distributoys, the court easily concludes that Tecnitoys has made an adequate showing that: (1) it would suffer irreparable harm, (2) the irreparable harm it would suffer is far greater than that that would befall Distributoys, and (3) the injunction will not harm the public interest. As noted above, Distributoys is in financial distress – in fact, it is being liquidated and the Bank has a lien over all of its assets, which may (as Distributoys argues) or may not include the toy cars. If Distributoys liquidates the toy cars, perhaps for pennies on the dollar, and uses the proceeds to satisfy its debt with the Bank or with other creditors, Tecnitoys will suffer irreparable harm.

Similarly, if Distributoys disposes of the toy cars or the proceeds from the sale of the toy cars and uses money due and owing to Tecnitoys to pay other creditors, Tecnitoys' irreparable injury will be greater than any injury that might befall Distributoys were this court to issue an order prohibiting Distributoys from disposing of the toy cars or their proceeds. Distributoys suggested in open court that any such standstill order may prevent it from meeting its obligations

---

[4] Accordingly, the defendants' argument that Tecnitoys' motion for a temporary restraining order must fail because Tecnitoys did not name the Bank as a party falls flat. The defendants contend that the Bank is a necessary party per Federal Rule of Civil Procedure 19(a)(1)(B), which requires that a plaintiff name a "person [that] claims an interest relating to the subject of the action [who] is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B). The defendants further argues that since Tecnitoys did not name the Bank, Tecnitoys' complaint can be dismissed under Federal Rule of Civil Procedure 12(b)(7), which enables a defendant to move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b). However, having found that the evidence tends to show that Tecnitoys did not sell the toy cars to Distributoys and that Distributoys wrongfully refused to return of the toy cars, the Bank's lien (which the defendants point out is a lien on all of Distributoys' assets, *see* Decl. of Goldfinger ¶ 20) is likely inapplicable to the toy cars, which do not belong to Distributoys and cannot be accurately characterized as assets of Distributoys. Accordingly, the Bank, at least for the purposes of deciding Tecnitoys' motion for a temporary restraining order, is not a necessary party.

to its creditors, which may lead it to file for bankruptcy. However, given that Distributoys is currently in financial distress so severe that it is being liquidated, Distributoys will not incur any material change in status as a result of the proposed temporary restraining order.

Distributoys contends that granting Tecnitoys' motion for a temporary restraining order will harm the public interest in the priority of liens by "effectively wip[ing] out the Bank's interest in the [toy cars] despite the Bank's superior security interest." (Defs.' Resp. at 9.) From the parties' arguments, it appears that the Bank's lien reaches only property of Distributoys; the Bank's lien would reach the toy cars, therefore, only if Tecnitoys sold Distributoys the toy cars. It would not reach the toy cars if Tecnitoys were correct that Distributoys held the toy cars by means of a bailment. While the court is persuaded, for the reasons discussed above, that Tecnitoys has shown a likelihood of success on the merits of this argument, Distributoys' concern is unfounded even if, when all the evidence is presented, Distributoys prevails on its argument that it purchased and owns the toy cars. Regardless of which argument carries the day in the end, it is undisputed that Distributoys has the toy cars, will not return them to Tecnitoys and will not pay for them. Because this is clear, and in recognition of the fact that determining the exact nature of the parties' agreement and the possessory rights that accompany it may be difficult, the court will limit its temporary restraining order to ensuring that neither the toy cars nor their proceeds are dissipated during the course of this litigation. The order will, therefore, protect the rights of Tecnitoys, if the court is correct that only a bailment has occurred, but will also protect the Bank, if it turns out that the cars are owned by Distributoys and are subject to the Bank's lien. By limiting the scope of the injunction to the protection of the cars and any proceeds from their sale, the court can insure that, whoever ultimately prevails, that party's rights are fully protected. In addition, the bond that Tecnitoys will be required to post will also protect

Distributoys against any injury it incurs if it turns out that this order was erroneously granted. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

## II. CONCLUSION

Given the foregoing, Tecnitoys' motion for a temporary restraining order is denied as to Goldfinger and denied insofar as Tecnitoys requested that Distributoys be ordered to return the toy cars to Tecnitoys, but will be granted insofar as Distributoys will be enjoined from disposing of the toy cars or any proceeds from the sale or other disposition of the toy cars. The parties shall appear in court for a bond hearing on Friday, June 10, 2011 at 10:30 a.m. to discuss a bond and the terms of the temporary restraining order.

ENTER:

                                              /s/
                                  JOAN B. GOTTSCHALL
                                  United States District Judge

DATED: June 9, 2011